# United States District Court
## EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

Premises located at 5412 S. Hately Ave., Cudahy, Wisconsin more particularly described as a single story residence, with light brown brick on 4 sides, and dark brown wood trim covering most of the front of the residence. There is a covered front porch, and the window trim is tan. There is an attached 1-car garage on the south side of the residence. The outer front door is brown and yellow. The numbers "5412" are gold colored and are attached to the front of the residence, to the right of the front door. The residence is on the east side of the street, and is the second residence south of E. Mallory Ave.

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

**CASE NUMBER:**

**09-M-0250**

I, Steven G. Kurkowski, being duly sworn depose and say: I am a Special Agent of the U.S. Immigration and Customs Enforcement, and have reason to believe that on the premises known as

> Premises located at 5412 S. Hately Ave., Cudahy, Wisconsin more particularly described as a single story residence, with light brown brick on 4 sides, and dark brown wood trim covering most of the front of the residence. There is a covered front porch, and the window trim is tan. There is an attached 1-car garage on the south side of the residence. The outer front door is brown and yellow. The numbers "5412" are gold colored and are attached to the front of the residence, to the right of the front door. The residence is on the east side of the street, and is the second residence south of E. Mallory Ave.

In the State and Eastern District of Wisconsin there is now concealed certain property, which is:

See Attachment C in violation of Title 18, United States Code Sections 2252A(a)(2) and 2252A(a)(5)(B).

The facts to support a finding of Probable Cause are as follows:

**See attached Affidavit of Special Agent :**

Continued on the attached sheet and made a part hereof.   √ Yes   ____ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

July 13, 2009   11:10 am.
Date and time issued

at Milwaukee, Wisconsin
City and State

PATRICIA J. GORENCE
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT

I, STEVEN G. KURKOWSKI being duly sworn, do hereby depose and state:

## INTRODUCTION

1. I am a Senior Special Agent with U.S. Immigration and Customs Enforcement (hereinafter "ICE"), and have been so employed by ICE (formerly the U.S. Customs Service) since September 2000. From October 1985 to September 2000, I was employed as Senior Deputy United States Marshal.

2. I am currently assigned to the Resident Agent in Charge office, Milwaukee, Wisconsin. One of my primary duties is the investigation of child pornography and child exploitation crimes. In addition, I am assigned as the RAC Milwaukee program manager for Operation Falcon and Operation Emissary, two nationwide ICE investigative initiatives focusing on Internet child pornography crimes. I also am assigned to a number of Project Flicker targets, another nationwide ICE investigative initiative focusing on child pornography obtained via the Internet. I am also the ICE representative to the Project Safe Childhood Task Force, Eastern District of Wisconsin, which is a nationwide U.S. Department of Justice initiative involving proactive child pornography/child exploitation investigations and community outreach programs. Moreover, I am also involved in joint child pornography and child exploitation investigations with special agents from the Wisconsin Department of Justice – Division of Criminal Investigation/Internet Crimes Against Children Task Force throughout the State of Wisconsin.

1

3. In connection with my official duties, I investigate criminal violations of federal statutes, including violations of Title 18, United States Code, Section 2252A(a)(2) (receipt or distribution of child pornography); and, 2252A(a)(5)(B) (possession of child pornography).

4. As a result of my participation in this investigation, receiving information from other law enforcement officials, and analyzing documents and records, I am familiar with the circumstances surrounding the facts detailed in this affidavit.

5. The information contained in this affidavit is not, however, an exhaustive account of everything I know about this case. Rather, it contains only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, United States Code, Section 2252A(a)(2) (receipt of child pornography); and 2252A(a)(5)(B) (possession of child pornography) is located at 5412 S. Hately Ave., Cudahy, Milwaukee County, Wisconsin, 53110, which is described more fully in Attachment "A" and 3670 E. Grange Ave., Cudahy, Milwaukee County, Wisconsin, 53110, which is described more fully in Attachment "B."

## EXPERIENCE OF THE AFFIANT

6. As part of my basic agent training, I have received specialized instruction in the area of child pornography and child exploitation investigations.

7. From September 2000 to November 2000, I received instruction for cyber-crimes/child pornography investigations at the Federal Law Enforcement Training Center in Brunswick, Georgia. During March of 2001, I received specialized instructions in Internet Investigations at the ICE Cyber Crimes Center, Fairfax Virginia.

2

Case 2:09-mj-00250-PJG    Filed 10/26/11    Page 3 of 39    Document 1

8. In March 2005, I attended the Investigation and Prosecution of Advanced Child Exploitation Cases Seminar sponsored by the Executive Office of United States Attorneys at the Department of Justice – National Advocacy Center, Columbia, South Carolina. This seminar focused on various aspects of Internet investigations, including newsgroups, Internet Relay Chat, and peer-to-peer technology. This seminar also covered nationwide child exploitation investigations, computer forensics, and responsibilities concerning child exploitation victims.

9. In September 2005, I completed the Child Exploitation Undercover Investigations Training at the ICE Cyber Crimes Center, Fairfax, Virginia. The training covered subjects such as commercial websites, chat rooms, defenses to undercover operations, and interviews/interrogations of child exploitation suspects. I am currently certified to conduct casual undercover investigations involving suspects allegedly involved in child exploitation crimes that utilize e-mails, websites, or chat rooms on the Internet.

10. I have continued my training in child pornography and child exploitation investigations by participating in in-service training conducted at the Wisconsin Department of Justice – Division of Criminal Investigation/ICAC Task Force Training Meeting in June, 2007 and at the U.S. Department of Justice – Project Safe Childhood National Conferences in December 2007 and September 2008.

11. During my career, I have participated in approximately one hundred and fifty investigations related to child pornography and child exploitation crimes. This involvement includes obtaining and executing search warrants, interviewing subjects of these investigations, assisting other agents in the collection of evidence or identifying evidence from forensic examinations.

3

12.     Throughout my years as a child exploitation investigator, I have participated in approximately seventy-five search warrants on residences, offices, and Internet Service Providers pertaining to the retrieval of evidence of possessing, distributing, receiving, and producing child pornography. I have also interviewed sex offenders who have been charged with violating state and federal laws, which prohibit the possession, distribution, receipt, and production of child pornography. I have acted as the main case agent and officer on investigations. I also review, catalog and analyze the retrieved evidence. I have assisted other agents in obtaining and executing search warrants, interviewing subjects of these investigations, and assisting in the collection of evidence or identifying evidence from forensic examinations.

13.     Due to my experience in the area of investigating child sex crimes, I have become familiar with the means by which individuals who collect and distribute child pornography retrieve the child pornographic images, the manner in which they communicate with the sellers, distributors, and suppliers of child pornography, and the manner in which they collect and save the child pornography that they have retrieved.

## BACKGROUND ON THE USE OF COMPUTERS FOR CHILD EXPLOITATION

14.     In my experience, the primary manner in which child pornography is produced, distributed, and possessed is through the use of computers. Pornographers produce both still and moving images directly from common video or digital cameras attached to a computer. Producers of child pornography often use a device known as a scanner to transfer photographs into a computer readable format, and then either send the images directly through the Internet or copy the images into a disk and send them through

4

the U.S. mails. Many digital cameras can be connected directly to a computer and through the use of various software programs, photographs and videos can be transferred directly to a computer, can be transferred to another computer via the Internet, and can be stored directly onto a computer.

15. Each time an individual views an online digital image, that image, or remnants of that image, are automatically stored in the hard-drive of the computer used to view the image. Once an individual opens an image of child pornography on his computer or accesses such an image through the Internet, that image is saved in the computers "cache." This allows investigators to review a history of the images opened/accessed by the user of the computer long after the image has been opened or accessed.

16. Digital information can also be retained unintentionally, e.g. traces of the path of an electronic communication may be automatically stored in many places (e.g. temporary files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to peer software, when the computer was sharing files, and some of the files, which were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data. In fact, I am aware that computer files or remnants of files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Even when the files have been deleted, they can be recovered months or years later using readily available forensic tools. In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file. Files that have been viewed via the Internet are automatically

5

Case 2:09-mj-00250-PJG    Filed 10/26/11    Page 6 of 39    Document 1

downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

17. Individuals who possess, receive, transfer, and distribute child pornography use communication devices known as a modem or cable connections that allow any computer to connect to another computer by telephone line, cable, or wireless service. By connection to an Internet service provider, electronic contact can be made to millions of computers around the world. Internet service providers are sometimes commercial concerns, which allow subscribers to dial local numbers and connect to a network, which is connected to their host systems. "Hotmail," for example, is an anonymous and free e-mail service based in California. These Internet service providers allow electronic mail service between subscribers, and usually between their own subscribers and those of other networks. Once someone has subscribed to an Internet service provider, it costs nothing to send or receive image files or electronic mail (E-Mail). Further, each image is a digital duplicate of the computer original, and distributing the pornography to others via computer does thus not diminish a child pornography distributor's collection. This open and anonymous communication allows the user to locate others of similar inclination and still maintain anonymity. Once contact is established, it is then possible to send text messages and graphic images to others. These communications can be quick, relatively secure, and as anonymous as desired.

6

18. The ability to store images in digital form makes the computer an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown exponentially within the last several years. Hard drives with a capacity of five hundred gigabytes are not uncommon, and these drives can store thousands of images at very high resolution.

19. Images can be electronically mailed to anyone with access to a computer and modem, and they can be downloaded onto computers, computer discs, or CD-ROM's for ease of storage, duplication, and distribution. With the proliferation of commercial services providing Internet service, computer transfer and digital copying is the preferred method of distributing child pornography.

20. The capacity of computers, and the ease of access and relative anonymity afforded to computer users, permits individuals with an interest in child pornography to amass large collections of such materials.

21. Based on my past training and experience investigating child pornography cases, I am also familiar with Internet chat rooms, such as those operated by Microsoft Corporation (MSN), Yahoo (Yahoo Chat), America OnLine (AOL Chat rooms and AOL Instant Messenger), and Internet Relay Chat (mIRC) and Google Hello. Chat rooms are forums usually about a particular subject posted on a particular website or server and distributed to others on the Internet. The role of a chat room is to allow users to access groups where they read and send messages (either to the entire "room" or "private 1 to 1") as well as send and/or receive pictures from the other members in the chat rooms. In order to participate in a chat room,

Case 2:09-mj-00250-PJG    Filed 10/26/11    Page 8 of 39    Document 1

an individual must join that chat room, supply identifying information, and follow the rules set forth by the chat room or group moderator.

22. I am aware that evidence of group use can be secured by reviewing the software loaded on a user's computer. The software configuration can reveal, among other things, which server a user gets his messages from, which groups the user subscribed to, and messaged read or sent by the user. Also, I am aware that servers, such as MSN, keep records of activities associated with a group including its creator or manager, identity of its registered members, as well as messages posted and/or pictures posted by a member.

23. Based on my training and experience, I am aware that individuals who are involved with child pornography or child exploitation are unlikely to ever voluntarily dispose of the images they possess, as those images are viewed as prized and valuable materials; that those individuals are highly likely to seek out additional images to satisfy their sexual appetites; and their ability today to seek out and obtain additional child pornography is unprecedented because of the Internet. Furthermore, I am aware that individuals who have an appetite for child pornography are likely to always have that desire, and that such individuals often molest children as well.

24. I also am aware, based on my training and experience, that a suspect's lack of a prior history of child-related sex offenses is not a determining factor in the outcome of these investigations. The majority of suspects investigated by me who were arrested, charged, and convicted, had no prior record of child sex offenses. I know that the Internet now offers an avenue of accessibility to child sex offenders, especially for child pornography and child enticement, that was not available before the Internet. I also know that many

8

convicted child sex offenders have had multiple victims over a period of many years before being caught. Many of those offenders are skilled in gaining the trust not only of their victims, but also of parents, relatives, guardians, friends and co-workers, which allows them to victimize children without raising suspicions. Your affiant also knows that many of these offenders have been caught as a result of investigations that began as child pornography investigations.

25. I also know that on March 14, 2006, a search warrant was executed at Brett Bedusek's home located at 5412 S. Hately Avenue, Cudahy, Wisconsin. The object of the search was child pornography. Shortly thereafter, Bedusek provided consent to search his computer located at his Whitewater, Wisconsin apartment. This search revealed that he possessed over 600 images of child pornography.

<u>SUMMARY OF FACTS ESTABLISHING PROBABLE CAUSE</u>

A. BRIEF SUMMARY OF THE GOOGLE HELLO PROGRAM

26. Google's "Hello" software program is an Internet service that enables users to trade images easily, quickly, and securely. The "Hello" program allows traders to connect directly (peer-to-peer) to each other's computers specifically for the purpose of sharing pictures. Movie files could also be shared, but in a limited fashion. Since the connection is peer-to-peer, there was no limit to the number and size of pictures that may be shared. Once a connection is created, the individuals simply selects the pictures they wish to share. This may be an individual picture or a folder containing thousands of pictures. While connected, the individuals can also engage in chat conversations. All pictures and chat are encrypted during the

9

transmission by the software. This overcomes the traditional limitation of peer-to-peer software by facilitating both live chat and exchange of large volumes of files simultaneously.

27. Information contained within the "How it Works" section of the Hello website described the "Hello" computer program in part as follows:

"Hello is a new program that lets you connect directly with your friends to share your digital pictures. If you've used an instant messenger program before, you've already got the idea. Hello is special because it lets you share pictures along with your messages."

"Hello is designed to let you send high-quality pictures instantly and securely over any speed connection, even dial-up. With Hello, you can send hundreds of high quality pictures to your friends in just seconds - you can't do that with email."

"When you share pictures with Hello, you get feedback from your friends right away. Also, Hello automatically encrypts all your pictures and chat before sending, so it's safer and more secure than email."

"When you use Hello to share pictures they arrive on your friend's screen immediately, without the hassle of uploading them to public websites. Your friends can download print quality copies of their favorite pictures to print right at home, which most "picture sharing" websites won't let you do."

28. Information contained within the "Security Information" section of the "Hello" website, under the header "How this program protects your information," further describes the "Hello" computer program in part as follows:

10

"Hello is a peer-to-peer program (p2p). This means that your computer is directly connected with other computers (similar to how popular file trading programs work). However, you will only be connected with the people you approve: you grant authorization to only the users you choose. No one can get your pictures without your permission."

"Like email, any pictures that you have shared in Hello can be saved and forwarded by the people you share them with."

"You connect with our servers during login and during chat sessions. After you've successfully shared an image with someone, you are directly connected to that person for the rest of your session together."

"Hello protects you from viruses by automatically confirming that all JPG files are valid pictures before allowing them to be traded."

29.     In order to use the "Hello" program, a user must have had access to a computer, which communicates through a modem connected to a telephone line or other high-speed telecommunications, with the central computer system operated by Google Incorporated. A user must have download and installed the "Hello" program. During the download and installation process, the user must have first set up their account via the "Hello" website. The user was asked to create the following information: User name or "handle," email address, and password. The user is then given access for downloading the installation file. Google sends a verification email to the email address provided during registration. The user is then instructed to open the email and click on an embedded link to verify the email address. Google stores this

11

information on their servers in Mountain View, California. Each account also has a unique User Identification number (UID) assigned by the "Hello" software.

30. Once the software is installed, each user is able to access the "Options and Preferences" section of the software and review or change any preferences that were selected during installation. Some of these options include: Remember my password; automatic log in; launch "Hello" when windows starts; save chat to history; and, automatically save all received pictures and location (the full file path where Hello automatically saved all received pictures). All the above preferences are automatically selected during install unless the user manually deselects an individual preference.

31. After a computer user downloads and installs the "Hello" application on their computer, the "Hello" program creates a series of directories. These directories and their structure on the computer are used for organizing, recording and maintaining chat records, shared images, "friends lists" and "thumbnails" or reduced versions of the images that were transmitted or received. Each time the user joins a chat with another "Hello" user, the directory structure grows to accommodate the records of the chats with each new user. On newer computers that utilize the Microsoft Windows 2000 or Windows XP operating systems, these directories by default are found within the computer user's Documents and Settings directory.

## B. BACKGROUND OF INVESTIGATION

32. In March 2005, ICE agents in Seattle, WA began investigating Internet users involved in the distribution and receipt of child pornography via the Google "Hello" file-sharing program. To date, this investigation has resulted in the identification of over three hundred distributors and recipients of child pornography. In October 2006, ICE Seattle Office received information from Royal Canadian

12

Mounted Police (RCMP) Detective Randy Wickins that they had arrested a Canadian citizen, Ian ROWSELL, who had been engaging in the distribution and receipt of child pornography via the Internet and Google "Hello" program.

33. Detective Wickins interviewed ROWSELL who admitted to molesting his infant daughter on video camera and trading the images over the Internet. ROWSELL agreed to allow Detective Wickins to assume ROWSELL'S Google "Hello" identity "bigbaddadie." In addition, ROWSELL, advised Detective Wickins that he had been chatting on line through the Google "Hello" program with an individual with the screen name "Babyho." ROWSELL believed "Babyho" was molesting his niece. Detective Wickins also provided the Seattle office with a copy of an undercover chat he had with Google "Hello" user "Babyho."

34. Seattle ICE agents issued a summons to Google to identify "Hello" user "Babyho" which Google provided. ICE Agents also searched the American Registry for Internet Numbers (hereinafter "ARIN") WHOIS database for the IP addresses used to access the Google "Hello" "Babyho" account and determined the owner of the IP address was South Central Rural Telephone Cooperative (SCRTC). A summons was issued to SCRTC, who responded to the summons that the IP address was registered to account holder Sheldon and Janey HAWKINS of Hardyville, KY.

35. Seattle agents forwarded the information to ICE agents in Bowling Green, KY. ICE Agents in Bowling Green then initiated an investigation of "Babyho." On November 16, 2006, ICE Agents executed a search warrant and seized several computers and computer related media containing child pornography. Jason HAWKINS was arrested and admitted to using the Google "Hello" screen name "Babyho." During a proffer interview, HAWKINS disclosed, from his Google "Hello" friends list,

13

screen names of individuals with whom he had been chatting and trading child pornography. HAWKINS also identified the screen names of individuals who he believed, based upon online communications with these individuals, were involved in the production of child pornography.

36.     One of the Google "Hello" users identified by HAWKINS as being involved in the production of child pornography was a "HAVENEWRARE." ICE Agents reviewed the list of HAWKINS' Google Hello files and found that HAWKINS had chatted and traded child pornography with Google "Hello" user "HAVENEWRARE." "HAVENEWRARE" was later identified as Jason MCLAUGHLIN residing in Latham, New York.

37.     Google "Hello" chat logs that were recovered from HAWKINS' computer also contained application messages that were generated by the "Hello" program and were inserted into the chat log as application events occurred. The messages included the date and time of the communication, text identifying the number of images sent by each user during the communication as well as the total number of images sent. Many of the images found within the chat conversations involved visual depictions of minors engaged in sexually explicit conduct. A number of communications between "HAVENEWRARE" and HAWKINS were recovered. In some of these communications, the two discussed trading child pornography, and actually traded child pornography.

38.     On May 17, 2008, ICE Agents executed a search warrant at the residence of Jason MCLAUGHLIN in the Northern District of New York. A computer, computer- related equipment and other items were recovered from this residence. The search warrant was based, in part, upon information that MCLAUGHLIN was producing child pornography and trading child pornography with other individuals using Google "Hello" Instant Messaging and the Internet. On this date he was arrested and

14

charged with producing child pornography, in violation of Title 18, United States Code, Section 2251(a). Forensic examinations of MCLAUGHLIN's computer media confirmed that he was, in fact, producing child pornography involving two minor females and trading this pornography with at least one other individual. The investigation also disclosed that he drugged these two minors using Ambien, a sleeping medication, prior to producing images of them engaged in sexually explicit conduct. Furthermore, thousands of images of other minors engaged in sexually explicit conduct were recovered from this computer media.

39. On July 23, 2008, MCLAUGHLIN was indicted on two counts of producing child pornography, one count of transporting child pornography, and one count of possessing child pornography. On February 24, 2009, MCLAUGHLIN plead guilty to both counts of producing child pornography.

40. On August 18, 2008, ICE Special Agent Todd Turner interviewed MCLAUGHLIN. His attorney was present for this interview. During the interview, MCLAUGHLIN stated that he was part of a group of individuals who traded child pornography, online, using Google "Hello" and Bitwise Instant Messaging software. He noted that a list of the individuals with whom he traded child pornography could be found in his Bitwise account within his "friends list." He could not recall all of the user IDs of the individuals in his "friends list," but gave ICE Special Agent Turner permission to access his Bitwise account to get his complete "friends list."

41. On January 23, 2009, MCLAUGHLIN's Bitwise account was accessed and his "friends list" was acquired. This list included the following Bitwise user: "allan." MCLAUGHLIN informed ICE Special Agent Turner that he traded child pornography with this Bitwise user.

15

42. On January 26, 2009, ICE Special Agent Turner contacted Bitwise IM service representative Kevin Hock and requested user information for the names contained in MCLAUGHLIN's "friends" list. Mr. Hock provided ICE Special Agent Turner with a list of user IDs, e-mail addresses, IP addresses, and the last time the user was logged on to Bitwise IM. Mr. Hock also provided the following user information on "allan:"

| | |
|---|---|
| Bitwise User Name: | Allan |
| E-mail Address: | Hunt5421@yahoo.com |
| Last Logged In to Bitwise IM: | January 26, 2009 @ 6:20:48 (GMT) |
| IP Address: | 173.89.47.49 |

43. On February 2, 2009, Yahoo Inc., responding to a Customs Summons, provided information for the Hunt5421@yahoo.com account:

| | |
|---|---|
| Login Name: | hunt5421 |
| GUID: | 7W2HGDZLKKRXOF6V6QG4WJMAME |
| Properties Used: | Flickr / Mail / Web Messenger |
| Yahoo Mail Name: | Hunt5421@yahoo.com |
| Registration IP Address: | 64.179.61.99 |
| Account created: | Tue Dec 05  17:53:04  2006 GMT |
| Other Identities: | hunt5421 (Yahoo! Mail) |
| Full Name: | Mr Allan Anderson |
| Address: | (BLANK) |
| City: | Beverly Hills |
| State: | CA |
| Country: | United States |
| Zip/Postal Code: | 90210 |
| Time zone: | pt |
| Birthday: | March 25, 1984 |
| Gender: | Male |
| Account Status: | Active |

In an affidavit, Yahoo, Inc. stated that because most of Yahoo accounts are provided free of charge Yahoo does not verify personal information provided by its users.

16

44.     On February 6, 2009, ICE Special Agent Turner again interviewed McLaughlin and he acknowledged that he had traded child pornography with every individual on his Bitwise IM friends list. He also specifically confirmed that he had traded child pornography with "allan." (hunt5421@yahoo.com) and that this individual claimed to have produced child pornography.

45.     On April 6, 2009, Investigator Mark Brown, a forensic examiner with the New York State Police, found information on username "hunt5421" on MCLAUGHLIN's HP desktop computer which had been obtained pursuant to federal search warrant in May of 2008. Using forensic software, Inv. Brown found a folder on MCLAUGHLIN's hard drive located at C: \MyDocuments\ MyPictures|Hello containing 7 .htm files of child pornography from "hunt5421." These files were described as:

a)     File Name:  11yo Pussy.htm - which contains 10 explicit images of a preteen female, described as:
        "1171325106532.jpg" – is an explicit image of preteen female's vagina.
        "1171325157394.jpg" – is an explicit image of a preteen female's vagina being spread by her hands.
        "1171325157394iii.jpg" " – is an explicit image of a preteen female's vagina being spread by her hands.
        "1171325456073.jpg" – is an image of a preteen female sitting in her underwear with her breast exposed.
        "1171325539719.jpg" – is an explicit image of a preteen female's vagina.
        "1171325705657.jpg" " – is an explicit image of a preteen female's vagina and anal area with vagina being spread by her hands.
        "1171325961704.jpg" – is an explicit image of a preteen female's vagina.
        "1171326021401.jpg" – is an explicit image of a preteen female's vagina being spread by her hands.
        "1171326058006.jpg" – is an image of a preteen female lying on a bed nude with her legs spread. The preteens face has been blackened out on this image.
        "1171326105327.jpg" – is an explicit image of a preteen female's anal area.

b)     File Name: Bed Lick.htm - which contains 6 images of a preteen female engaged in oral sex with an adult male described as:
        "51372_70129159_122_1199loa.jpg" – is an image of a preteen female between the ages of four (4) to six (6) years of age holding an adult males penis.

17

"51056_70129157_122_1072lo.jpg" – is an image of a preteen female between the ages of four (4) to six (6) years of age engaged in oral sex with an adult male penis.

"53648_70129154_122_524lo.jpg" – is an image of a preteen female between the ages of four (4) to six (6) years of age licking an adult male's penis.

"57087_70129153_122_182lo.jpg" – is an image of a preteen female between the ages of four (4) to six (6) years of age licking an adult male's penis.

"57326_70129151_122_538lo.jpg" – is an image of a preteen female between the ages of four (4) to six (6) years of age holding and licking an adult male's penis.

"59756_70129148_122_924lo.jpg" – is an image of a preteen female between the ages of four (4) to six (6) years of age engaged in oral with an adult male.

c)  File Name: dscx.htm - which contains 8 images of a preteen female engaged explicit sexual intercourse with an adult male described as:

"dscx0001.jpg" – she is engaged in oral sex with an adult males penis.

"dscx0005.jpg" – is an explicit image of a preteen female vagina and anal area.

"dscx0006.jpg" – is an image of a preteen female exposing her breast.

"dscx0008.jpg" – is an image of a preteen female's vagina and an adult male's penis.

"dscx0009.jpg" – is an image of a preteen female and adult male having vaginal intercourse.

"dscx0010.jpg" – is an image of a preteen female lying on a bed with her legs open displaying her vaginal area

"dscx0013.jpg" - is an image of a preteen female adult male engaged in anal intercourse.

"dscx0554.jpg" - is an image of a preteen female eating at a table.

c)  File Name:  from hunt5421.htm - which contains 25 images of various preteen females nine of which in explicit sexual poses or holding signs saying "Fuck Toy", "Owned Slut" and "Hi, Fred! I am K. Your slut" described as:

"2.jpg" – is an image of a preteen female between the ages of 3 to 5 standing in her underpants holding a sign saying, "Hi, Fred! I am K. your slut".

"48068_62140894_122_716lo.jpg" – is an image of a preteen female lying on a bed with her legs spread displaying her vagina.

"48076_62880636_122_76lo.jpg" – is an image of a toddler lying down with her vagina exposed.

"48078_62880650_122_152lo.jpg" – is an image of a toddler lying down with her vagina exposed.

"48092_62880628_122_898lo.jpg" – is an image of a toddler lying down with her vagina exposed.

"a243.jpg" – is an image of a toddler lifting up shirt and with her pants down exposing her breast and vagina.

"dcp_0119.jpg" – is an image of a toddler sleeping with adult male standing over her with his penis displayed.

"DSC_2182.jpg" – is an explicit image of a toddler's butt cheeks being spread with an adult male's hand.

18

"DSC_2183.jpg" – is an explicit image of a female toddler engaged in anal intercourse with an adult male.

d)      File Name:  Pink Thong girl.htm – which contains 71 images of various preteen females three of which in explicit sexual intercourse with an adult male, described as:
"1179698985793.jpg" – is an explicit image of toddler's vagina and anis with an adult's hand exposing her genitalia.
"1179700600014.jpg" – is an explicit image of a toddler's vagina with an adult male's finger in her vagina.
"1179795705703.jpg" – is an explicit image of a toddler's vagina with an adult male's hand spreading her vagina.

e)      File Name:  Red Head hottie.htm – which contains 8 images of a preteen female in her bra and panties, one of the images she has her bra off.  Three of these images described as:
"2688131Mgf.jpg" – is an image of a preteen female in her underwear with her legs spread.
"2854921SiC.jpg" – is an image of a preteen female in her underwear with her legs spread.
"wow220.jpg" – is an image of a preteen female in her underwear with her legs spread, but her breasts are exposed.

f)      File name:  Vid pics.htm – which contains 7 explicit images of a preteen female's genital area, described as:
"vlcsnap-228297.jpg" – is an image of a preteen female's bent over butt with underwear on.
"vlcsnap-228438.jpg" – is an image of a preteen female's vagina area with her underwear on and her legs spread.
"vlcsnap-228542.jpg" – is an image of a preteen female's vaginal area with her underwear on.
"vlcsnap-230097.jpg" – is an image of a preteen female's bent over butt without underwear.
"vlcsnap-230453.jpg" – is an image of a preteen female's bent over butt without underwear.
"vlcsnap-230908.jpg" – is an image of a preteen female's bent over butt and vaginal area without underwear on.
"vlcsnap-231186.jpg" – is an explicit image of a preteen female's bent over butt and vaginal area without underwear on.
These images photos were received by MCLAUGHLIN's computer between 2006 and 2007.

46.      On April 14, 2009, Yahoo Inc., in response to an April 6, 2009, search warrant, produced subscriber records pertaining to hunt5421@yahoo.com for one year revealing several Internet Protocol (IP) addresses.  A review of Yahoo, Inc. records revealed that hunt5421@yahoo.com was accessed 406 times from IP address 216.47.252.11.  As stated below, an ARIN's search was conducted to determine

19

who owned the IP address 216.47.252.11. According to Yahoo, Inc.the profile information for this account was created on December 5, 2006.

47.    On or about April 20, 2009, Special Agent Turner performed an ARIN database search on the IP address of 216.47.252.11. As noted in paragraph 34 above, this search identifies the name or company to which an IP address is assigned. The ARIN search revealed that this IP address is assigned to ChoiceOne Communications.

48.    On June 4, 2009, One Communications, formerly known as ChoiceOne Communications, in response to a Customs Summons served by ICE Special Agent Todd Turner of RAC Albany, NY detailed that IP address: 216.47.252.11 was subscribed to Bedusek Agency, Inc. at 5656 Packard Avenue, Cudahy, Wisconsin 53110. The Bedusek Agency, Inc. is an insurance agency located in the Eastern District of Wisconsin, within the City of Cudahy, Milwaukee County, Wisconsin.

49.    On August 8, 2008, ICE Special Agent Turner was informed of the website "iMGSRC.ru" during a proffer with Jason MCLAUGHLIN, and his attorney. MCLAUGHLIN indicated that many child pornographers use this site to meet other child pornographers to trade images. He advised ICE Special Agent Turner to visit the site and use the search word, "kids", to find child pornographic images. ICE Special Agent Turner accessed the site and child pornographic images were found along with child erotica images.

50.    On April 14, 2009, subscriber information on email account hunt5421@yahoo.com from a search warrant issued to Yahoo! on April 6, 2009 revealed that email address hunt5421@yahoo.com is connected to "iMGSRC.ru" profile, "Hunt5421."

51.    iMGSRC.RU – (short for Image Source) is a photo sharing program that any of its users

20

can upload. This site appears to be linked to a Russian server. The subject profile named "Hunt5421" is linked to the email address hunt5421@yahoo.com, which is the same as the Bitwise IM email account for "Allan." As of June 30, 2009, the profile was displayed with the following information:

Real name:   Hunt
Email:       hunt5421@yahoo.com
Registered on: 2006-12-19
User info:   Love them panties! NO FREE PASSES!!!! DON'T EVEN ASK! My passes have changed 1/22/09

Albums of hunt5421 (19)

Tagged under: bikini, bra, candid, daughter, family, girl, girls, little, panties, pool, preteen, swim, swimsuit, training bra, underwear, up skirt, young.

Titles of hunt5421 albums and descriptions of photos:

| Name | photos | in category | pageviews comm. | Modified[1] |
|---|---|---|---|---|
| Girls Panties (password protected) | 20 | kids | 1850 / 93971 | 2009-06-16 00:11:29 |
| Milana Models For Us | 18 | undefined | 1662 / 252408 | 2009-04-20 07:23:09 |
| Unknown Hottie | 16 | kids | 1850 / 93971 | 2009-04-13 02:11:44 |
| Pink Dress & Panties | 4 | kids | 399 / 118806 | 2009-03-04 22:11:08 |
| Misc Panty Pics | 36 | kids | 1487 / 669060 | 2009-03-04 08:18:11 |
| Girls & Training Bras | 42 | kids | 0 / 257 | 2009-01-29 07:02:36 |
| Annie | 29 | kids | 1011 / 457917 | 2009-01-21 03:47:42 |
| Looking for more of her (ez) (password protected) | 8 | kids | 294 / 102914 | 2009-01-20 04:31:28 |

---

1 In this context, "modified" means the file was created, edited, or password protected on the date listed.

Case 2:09-mj-00250-PJG   Filed 10/26/11   Page 22 of 39   Document 1

| | | | | |
|---|---|---|---|---|
| 6yo Shoe Shopping Upskirts | 36 | kids | 578 / 177200 | 2009-01-19 05:41:26 |
| Upskirt Cutie 6yo (password protected) | 12 | kids | 0 / 154 | 2009-01-19 05:33:09 |
| Upskirt Cutie 6yo (preview) | 2 | kids | 159 / 60941 | 2009-01-19 05:20:02 |
| 11yo in Bikini | 7 | kids | 458 / 129559 | 2009-01-19 05:15:42 |
| Some of my Best panty pics (password protected) | 35 | kids | 0 / 198 | 2009-01-16 08:28:18 |
| Ashley's 9th Birthday with Friends (password protected) | 114 | kids | 0 / 791 | 2009-01-16 05:50:40 |
| Ashley's 9th Birthday (Preview) | 5 | kids | 206 / 65798 | 2009-01-16 05:30:34 |
| 5yo Blonde in Panties | 10 | kids | 342 / 125159 | 2009-01-16 05:27:41 |
| Park Bikini Candids | 14 | kids | 332 / 114916 | 2009-01-16 05:21:29 |
| Allison, Emily & Friends (Preview) | 3 | kids | 327 / 88061 | 2009-01-16 05:11:48 |
| Allison, Emily & Friends (pool, upskirt, ect) (password protected) | 58 | kids | 0 / 714 | 2009-01-16 05:07:30 |

52.    The majority of the images in each of the albums would be considered child erotica, except for the images located in the album named, "Upskirt Cutie 6yo." This album has a total of twelve images of a female between the ages of 5 to 7 years of age. Eight images (IMG_0110.jpg, IMG_0106.jpg, IMG_0110.jpg, IMG_0106.jpg, IMG_0110.jpg, IMG_0106.jpg, IMG_0110.jpg, and

Case 2:09-mj-00250-PJG    Filed 10/26/11    Page 23 of 39    Document 1

IMG_0106.jpg) are explicit images of a preteen female's genital area. The images are up her dress. Four images are of the same female walking away. I believe this album would be considered child pornography because of the angle the photo was taken.

53. On June 9, 2009, ICE Special Agent Todd Turner, acting in an undercover capacity using the Bitwise id of Jason MCLAUGHLIN, "HAVENEWRARE" engaged in a chat with Bitwise user id: "allan." During the chat, "allan" indicated that all he has been doing since he last chatted with "HAVENEWRARE" was "workin, fishin, sleepin." When asked if there was any new sites, "allan" responded, "the only one I know of is "1024chan, but that is all nn." ICE Special Agent Turner viewed this site and it did appear to have child pornography on it. ICE Special Agent Turner indicated the website "1024chan" is a completely anonymous image and discussion board and when you enter the directory labeled, "/jb/ - Jailbait" there are images posted of female between the ages of 5 to 8 years age engage in explicit sexual intercourse with an adult male under the file name is 12470361887.jpg. Other similar images are posted on this website. "Allan" asked if "HAVENEWRARE" was a cop because "allan" believed that you can never be too safe. "Allan" went on to say that, "he had just heard about the recent bust from AU." "Some authorities put up a file for someone to download as a trap and he spread the link and now they have over 9000 IP address that dl (downloaded) the file. It's getting really bad nowadays." At the end of the chat, "allan" inquired about Jason's victims, about their ages now and if "HAVENEWRARE" was still in contact with them. "Allan" chatted, "I even forgot their names... I have them at home in my stuff. Im working now;-)" I believe that this part of the chat indicated to ICE Special Agent Turner that "allan" has traded child pornographic images with Jason MCLAUGHLIN and that he has knowledge that what he is doing is illegal.

23

Case 2:09-mj-00250-PJG    Filed 10/26/11    Page 24 of 39    Document 1

54. On June 15, 2009, in a proffer with Jason MCLAUGHLIN and his attorney, MCLAUGHLIN indicated the bitwise user id "allan" was an avid ice fisherman and that his parents own an insurance company that he works at. MCLAUGHLIN further explained that bitwise user id "allan" indicated that he lived in the Wisconsin and that he believed that he was around the age of 25 or 26 because he was in college dating a 19 year old girl when he started chatting with "allan" in 2006. MCLAUGHLIN admitted that he had traded 20 to 30 images of his victims with "allan." The first pictures that he received from "allan" was an up the skirt picture of a six (6) year old female that MCLAUGHLIN believed to be "allan's" niece. Four (4) images were found on Jason MCLAUGHLINS's computer after computer forensics were completed and indicated that MCLAUGHLIN had traded his produced child pornography images of his victims to Bitwise IM user ID, "allan." Descriptions of these images are as follows:

"49.jpg" – is an image of a preteen female with her breast exposed and a sign on her stomach saying, "for my friend allan."

"60.jpg" – is an image of a preteen female with her legs spread in her underwear again with a sign saying, "for my friend allan."

"61.jpg" – is an explicit image of a preteen female's vaginal area with her underwear on and part of a sign displaying the name, "allan."

"73.jpg" – is an explicit image of a preteen female's vagina with the sign, "for my friend allan."

These pictures were all date-stamped August 9, 2007.

55. On June 16, 2009, Accurint , a database system, indicated that a Brett A. BEDUSEK resides at 5412 S. Hately Avenue, Cudahy, Wisconsin. Accurint also lists the names of Jay BEDUSEK, Evette BEDUSEK, and Christine BEDUSEK as possibly residents at this address.

24

## C. PREVIOUS INVESTIGATION INTO BRETT BEDUSEK, WISCONSIN

56.     On March 14, 2006 RAC Milwaukee executed a federal search warrant at the residence of Brett BEDUSEK, 5412 S. Hately Ave., Cudahy, WI. ICE RAC Milwaukee had received information from SAC Chicago that Brett BEDUSEK was a member of the WinMX Peer-to-Peer file sharing community "Kiddypics and Kiddyvids" that was involved in the possession, distribution, and production of images of child pornography. A computer and several items of computer storage media were seized from this residence, however, it was learned that BEDUSEK was presently at school, the University of Wisconsin – Whitewater, and was at his apartment, in Whitewater, Wisconsin.

57.     On March 14, 2006 Brett BEDUSEK granted consent to search his apartment at 975 W. Main St., Apt. 12, Whitewater, WI, his computer and computer related equipment located therein. A preliminary examination of an external hard drive found in excess of a thousand images and video files of alleged child pornography. BEDUSEK admitted to being a member of the WinMX chat room community "Kiddypics and Kiddyvids". Seized pursuant to the consent search were one computer CPU, CD-ROM's, printed images of child pornography, 2 external hard drives, and several boxes of young girls underwear.

25

58.     During this investigation, ICE Special Agent interviewed Brett BEDUSEK where he admitted using the Internet to trade images of child pornography. BEDUSEK also stated that upon graduation from UW-Whitewater, he expected to go into the insurance business with his father, who owns the family business – Bedusek Insurance Agency, located in Cudahy, Wisconsin.

59.     During this investigation, BEDUSEK used the Yahoo e-mail address "hunt5412@yahoo.com (a slight deviation from the Yahoo e-mail address identified in the RAC Albany, NY investigation), and used Time Warner Road Runner for access to the Internet at his residence in Cudahy, Wisconsin.

60.     BEDUSEK also indicated to ICE Special Agent Kurkowski that he enjoyed fishing, which was the reason for his personalized Wisconsin license plate "BBFISHN."

61.     BEDUSEK also admitted to ICE Special Agent Kurkowski that the computer CPU and external hard drive that he would take to and from his home in Cudahy and school apartment would contain thousands of images and videos of child pornography. A forensic examination of the hard drives verified his statement.

### D. CURRENT INFORMATION IDENTIFYING BRETT BEDUSEK

62.     Wisconsin DOT/DMV records indicate that BEDUSEK still maintains a Wisconsin drivers license, number B322-0618-4065-05 with an address of 5412 S. Hately Ave., Cudahy, WI, and a vehicle with a personalized license plate of "BBFISHN" on a 2004 Dodge Ram pickup, at the same address.

63.     ICE Special Agent Kurkowski has reviewed some of the information provided by ICE Special Agent Turner from RAC Albany, NY, one of which was a summons to Time Warner Cable for IP address 173.89.48.201 that was identified in the Yahoo summons for "hunt5421". Time Warner Cable

26

Case 2:09-mj-00250-PJG    Filed 10/26/11    Page 27 of 39    Document 1

indicates that this IP address was assigned to:

Name: Brett Bedusek

Address: 5412 S. Hately Ave., Cudahy, WI 53110

Phone: 414-481-5702

Usernames: bbfishin@wi.rr.com

Length of Service: 06/30/04 – 5/8/09

64. On July 7, 2009 ICE Special Agent Kurkowski drove past 3670 E. Grange Ave., Cudahy, WI and observed it to be location of the Bedusek Insurance Agency, and at 5412 S. Hately Ave., Cudahy, WI observed a 2004 Black Dodge Ram pickup truck with the license plate "BBFISHN." These two locations are less than a 5 minute drive from each other. One could walk from each location in less than 15 minutes by walking across a city park.

65. On July 9, 2009 WE Energies provided account information on 3670 E. Grange Ave., Cudahy, WI and 5412 S. Hately Ave., Cudahy, WI as follows:

a) 3670 E. Grange Ave., Cudahy, WI: Bedusek Insurance Agency (first floor), service on date of 01/06. Second floor is a private residential account and unrelated. Prior to 01/06, Bedusek Insurance Agency was located at 4726 S. Packard Ave., Cudahy, WI and prior to that at 5656 S. Packard Ave., Cudahy, WI.

b) 5412 S. Hately Ave., Cudahy, WI: Jay Bedusek has received service to this address under this name since 1978.

66. ICE Special Agent Steven Kurkowski has reviewed the images described in paragraph 45

27

and agree with the descriptions as noted.

## NATURE OF THE COMPUTER EVIDENCE TO BE SEIZED

67. Based on my training, experience, and discussions with other law enforcement officers involved in the investigation of child pornography and child exploitation crimes, I know that individuals involved in child pornography keep and collect items containing child pornography over long periods of time. Furthermore, individuals involved in child pornography use places that they consider to be private (typically their home) to view, download, store, and view their child pornography collections.

68. Based on the foregoing, it is believed that evidence of a violation and/or an attempted violation of Title 18, United States Code, Section 2252A will be located within the locations described in Attachment A and B.

69. Based upon my knowledge, training and experience, and the experience of other law enforcement personnel, I know that individuals engaged in child exploitation will use places that they consider private and secure to receive, download, store, and view pornographic images or video-clips obtained from the internet; most often this private and secure place is the individual's residence.

70. Based upon my knowledge, training and experience, and the experience of other law enforcement personnel, child pornographers will maintain in their residences safes, safe deposit boxes, storage lockers, and hidden compartments in which they attempt to hide pornographic images contained on storage devices such as video tapes, DVD's, floppy disks, compact disks, and computers. Individuals engaged in child exploitation further will store child pornography and materials related to child pornography (such as passwords) in inaccessible places such as safes or locked compartments. I therefore request

28

permission to gain entry to any safes or locked compartments, by force, if necessary.

71.     Based upon my knowledge, training and experience, and the experience of other law enforcement personnel, individuals who access child pornography websites or engage in trading child pornography will store their passwords and login information in a secure and private location so that they can access this information when needed; this location typically is a computer under their control.

72.     Based upon my knowledge, training and experience, and the experience of other law enforcement personnel, individuals who access child pornography websites or engage in trading child pornography will download and/or print out images and video-clips featuring child pornography to add to their collections.  These collections will be kept on computers, computer disks, and books under the individual's control.  These computers and computer disks will be stored in a secure and private location so that the user can access them.  This location is typically the individual's residence.

73.     Searches and seizures of evidence from computers commonly require law enforcement officers to seize most or all computer items (hardware, software and instructions) to be processed later by a qualified computer expert in a laboratory or other controlled environment.  This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data analysis "on-site."  This is almost always true because of the following:

a.     Computer storage devices (such as hard disks, DVD's, CD-ROMs, floppy disks, tapes, compact disks, and others) can store the equivalent of thousands of pages of information.  Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names.  This requires searching authorities to examine all the stored data to determine whether it is

29

included in the warrant. This sorting process can take weeks or months, depending on the volume of data stored and it would be impractical to attempt this kind of data search on site;

b.    Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive code imbedded in the system), the controlled environment of a laboratory is essential to complete an accurate analysis;

c.    In order to fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers), and any applications software, which may have been used to create the data (whether stored on hard drives or on external media).

74.    If, after inspecting the computers, the input/output devices, system software, and pertinent computer-related documentation, it becomes apparent that these items are no longer necessary to retrieve and preserve the data evidence, such materials and/or equipment will be returned within a reasonable time.

75.    Your affiant does not believe that any computer(s) likely to be seized at the 5412 S. Hately Ave. location is used as part of a business, but computers at 3670 E. Grange, Ave., would be used as part of

30

the Bedusek Insurance Agency business. Every effort will be made to extract business records from any computers seized at this location and turned over to Jay Bedusek as quickly as possible.

## CONCLUSION

76. Based on the above information, there is probable cause to believe that 18 U.S.C. §§ 2252A, which among other things, make it a federal and/or state crime for any person to knowingly possess, receive, or transport child pornography, have been violated, and that the following property, evidence, fruits and instrumentalities of these offenses are located at 5412 S. Hately Ave., City of Cudahy, Milwaukee County, Wisconsin and 3670 E. Grange Ave., City of Cudahy, Milwaukee County, Wisconsin:

a. Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

1. Any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software

31

Case 2:09-mj-00250-PJG    Filed 10/26/11    Page 32 of 39    Document 1

manuals related to or used to visually depict child pornography or child erotica; contain information

pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or

information pertaining to an interest in child pornography, child erotica or information pertaining to an

interest in child pornography;

2.     Books and magazines containing visual depictions of minors engaged in sexually

explicit conduct, as defined in 18 U.S.C. § 2256;

3.     Originals, copies, and negatives of visual depictions of minors engaged in sexually

explicit conduct, as defined in 18 U.S.C. § 2256; and

4.     Motion pictures, films, videos, and other recordings of visual depictions of minors

engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

5.     Information or correspondence pertaining to the possession, receipt or distribution of

visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were

transmitted or received using computer, some other facility or means of interstate or foreign commerce,

common carrier, or the U.S. mail including, but not limited to:

6.     Envelopes, letters, and other correspondence including, but not limited to, electronic

mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate

or foreign commerce, including by United States mail or by computer, of visual depictions of minors

engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

7.     Books, ledgers, and records bearing on the production, reproduction, receipt,

shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through

32

interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

8. Credit card information, including but not limited, to bills and payment records;

9 Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence and;

10. Records or other items which evidence ownership or use of computer equipment found in the above residence, including but not limited to, sales receipts, bills for Internet access, and handwritten notes.

This affiant requests authority to seize such material.

77. Based upon the foregoing, I respectfully request that this Court issue a search warrant for 5412 S. Hately Ave., City of Cudahy, Milwaukee County, Wisconsin more particularly described in Attachment "A", and 3670 E. Grange Ave., City of Cudahy, Milwaukee County, Wisconsin, described in Attachment "B", authorizing the seizure of the items described in Attachment C.

STEVEN G. KURKOWSKI
Special Agent, ICE

33

## ATTACHMENT "A"

## DESCRIPTION OF PROPERTY TO BE SEARCHED

Premises located at 5412 S. Hately Ave., Cudahy, WI more particularly described as a single story residence, with light brown brick on 4 sides, and dark brown wood trim covering most of the front of the residence. There is a covered front porch, and the window trim is tan. There is an attached 1-car garage on the south side of the residence. The outer front door is brown and yellow. The numbers "5412" are gold colored and are attached to the front of the residence, to the right of the front door. The residence is on the east side of the street, and is the second residence south of E. Mallory Ave.

<u>ATTACHMENT "B"</u>

DESCRIPTION OF PROPERTY TO BE SEARCHED

Premises located at 3670 E. Grange Ave., City of Cudahy, Milwaukee County, Wisconsin, described as a two story multi-occupant residence, situated on E. Grange Ave., situated on the north side of the street, and the second building west of S. Kirkwood Ave. The first floor is occupied by the Bedusek Insurance Agency, and the second floor is a private residence not associated with this investigation and not part of the property to be searched. The main entrance to the Bedusek Insurance Agency faces south. The building has white siding with a black window trim, a glass front door, and the words "Bedusek Agency, Inc. Insurance" on the two front windows and the glass front entrance door. The numbers 3670 are affixed to the front of the building in black numbers, above the front entrance door.

<u>ATTACHMENT "C"</u>

ITEMS TO BE SEARCHED FOR AND SEIZED

1.      Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

a.      Any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography; and

b.      Books and magazines containing visual depictions of minors engaged in

sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   c.  Originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   d.  Motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

  2.  Information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

   a.  Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

   b.  Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256.

  3.  Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence.

  4.  Records or other items which evidence ownership or use of computer equipment found in the

above residence, including, but not limited to, sales receipts, bills for Internet access, and handwritten notes.